IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHERYL WEBB**                                                                                       **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO.** 3:17-CV-904-LG-LRA

**NATIONWIDE GENERAL INSURANCE
COMPANY; and JOHN DOES 1-5**                                                                          **DEFENDANT**

## COMPLAINT

**COMES NOW** the Plaintiff, Cheryl Webb (hereinafter referred to as "Cheryl" or "Plaintiff") by and through her attorney of record, and files this her Complaint against Defendants Nationwide General Insurance Company and John Does 1 through 5, and for her causes of action would show unto the Court the following:

## PARTIES

1. Plaintiff Cheryl Webb is an adult resident citizen of the Southern District of Mississippi.

2. Defendant Nationwide General Insurance Company ("Nationwide") is a non-resident insurance company doing business in the State of Mississippi who may be served through its agent for service of process, United States Corporation Company, located at 5760 I-55 North, Suite 150, Jackson, Mississippi 39211 and/or through the Mississippi Commissioner of Insurance.

3. Defendants designated as John Does 1 through 5 are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include, but are not limited to, agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint-tortfeasors, tortfeasors, contractors, co-conspirators, joint adventurers, partners, stockholders, or any other related person or entity of the named

Defendants and/or any and all other persons who may be liable to Cheryl for the claims asserted herein. Cheryl will amend her Complaint once the identities of the unknown Defendants are learned.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this is a tort action involving a Mississippi resident and a foreign corporation and Cheryl has accumulated and demands damages in excess of $75,000.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

6.      Cheryl has lived at her home located at 231 Cassil Street, Petal, Mississippi (hereinafter "Cheryl's Home") for eleven (11) years.

7.      On January 21, 2017, an EF-3 tornado ("the Tornado") struck Cheryl's Home and severely damaged the Home, including substantial structural, roof, and water damage. The damage did not exist prior to the Tornado.

8.      At the time of the Tornado, Cheryl's Home was insured under a contract of insurance with Nationwide. Nationwide issued the Policy, Policy # 6323HO549538, on November 17, 2016. A true and correct copy of the Policy is attached hereto as **Exhibit 1**. The Policy includes the following pertinent coverages:

  a)    Dwelling coverage of up to $279,900;

  b)    Other structures coverage of up to $27,990;

  c)    Personal property coverage of up to $195,930;

  d)    Loss of use coverage of up to $55,980; and

  e)    Debris removal.

9. Cheryl maintained the Nationwide Policy for approximately three (3) years prior to the Tornado, and Cheryl continuously paid Policy premiums to Nationwide during that time.

10. After the tornado, Cheryl immediately contacted Nationwide to report her tornado loss and file a claim, Claim No. 531232-GE.

11. Cheryl's Home sustained substantial damage as a result of the tornado, yet Nationwide failed and refused to provide the coverage needed to repair the extensive loss to Cheryl's Home.

12. Nationwide assigned David Williamson to adjust Cheryl's claim. David admitted that he mostly dealt with small claims and that he was not used to adjusting large claims such as Cheryl's. David further admitted that this was his first large loss claim.

13. Nationwide failed to provide the coverage that Cheryl was entitled to under the Policy and, specifically, failed to provide the coverage amount needed for Cheryl to make the reasonable and necessary repairs to her Home.

14. For these reasons, and as explained in more detail below, Nationwide is liable to Cheryl for the following claims:

## COUNT I - CLAIM FOR POLICY BENEFITS

15. Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

16. Cheryl made claims pursuant to the Home Policy which arose in connection with the subject tornado loss.

17. Although Cheryl has made due demand for payment of policy benefits for the above occurrence, Nationwide has failed and refused to provide proper coverage and refused to pay the full benefits which are now due and remain unpaid, all to the detriment of Cheryl.

### COUNT II – CLAIM FOR BAD FAITH FAILURE TO PAY BENEFITS, BAD FAITH DENIAL OF CLAIMS, BAD FAITH DELAY, AND BAD FAITH INVESTIGATION - NATIONWIDE

18. Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

19. At all material times, Nationwide, acting through their agents, officers, and employees, acted wrongfully and in bad faith withheld benefits due to Cheryl under the policy and failed to provide Cheryl coverage or benefits for the claims of Cheryl which arose in connection with the subject tornado. Nationwide has unreasonably delayed and refused to provide coverage or benefits under the policy, and knowing Cheryl is financially and emotionally distressed by reason of a refusal of Nationwide to provide coverage and to pay benefits due under the Home Policy.

20. Nationwide acted in bad faith by failing to timely investigate and adjust Cheryl's claims following the loss of her home to a tornado on January 21, 2017. Nationwide purposefully delayed its investigation and unreasonably denied Cheryl's claims.

21. Nationwide refused to pay benefits on Cheryl's claims due under the Home Policy, and forced Cheryl to hire legal counsel to protect Cheryl's rights under the policy. By refusing to explain Cheryl's rights under each separate claim, timely investigate each separate claim, and pay each separate claim, Nationwide has acted fraudulently, maliciously, oppressively and outrageously towards Cheryl with conscious disregard for her rights. These actions taken by Nationwide were purposeful and deliberately undertaken with malice and vindictiveness on the part of Nationwide. Cheryl has suffered embarrassment, humiliation, and mental and emotional distress because of these actions by Nationwide.

22. Nationwide's refusal to pay benefits has compelled Cheryl to engage legal counsel and to initiate litigation to recover coverage and benefits under the Home Policy.

23. Nationwide has deprived Cheryl of the benefits justly due under the policy, when Nationwide knew that those benefits were needed by Cheryl.

24. By unreasonably delaying and refusing to provide benefits of coverage in payment of Cheryl's valid claims, Nationwide acted fraudulently, oppressively, maliciously, and outrageously toward Cheryl, with conscious disregard for her rights under the law and under the Home Policy, and with the intent and design of benefitting Nationwide financially, of harassing Cheryl, of discouraging Cheryl from asserting valid claims, of avoiding payment of amounts due for the valid claims, and of causing or willfully disregarding the probability of causing severe emotional distress to Cheryl.

25. The course of conduct of Nationwide, as described above, was deliberately undertaken; was wanton, willful, and in reckless disregard of the rights and well-being of Cheryl, and was attended by malice and vindictiveness on the part of Nationwide:

   a) Willfully failed to tender any payment of benefits owed to Cheryl;

   b) Willfully failed to investigate with reasonable promptness all relevant information and make a realistic evaluation of the claim;

   c) Willfully failed to investigate, adjust, and pay Cheryl's claim in a reasonably prompt manner;

   d) Willfully failed to tell Cheryl the plain truth regarding investigation, evaluation, and payment or nonpayment of the claim;

   e) Willfully failed to evaluate each and every issue during the adjusting of Cheryl's claim, to give at least equal consideration to the interest of Cheryl which Nationwide gave itself;

   f) Willfully utilized investigation, evaluation, and/or adjusting processes for improper purposes in order to deny and/or delay payment of the claim;

   g) Willfully disregarded pertinent and relevant information while investigating, evaluating, and/or adjusting the claim in order to deny the claim; and

   h) Willfully and without justification failed to provide coverage to Cheryl.

By reason thereof, Cheryl requests that this Court award punitive damages.

26.     As a direct result of the fraudulent, oppressive, malicious, and outrageous conduct of Nationwide and of their bad faith in handling the claims of Cheryl for benefits under the applicable policy, Cheryl have sustained substantial economic loss, including but not limited to attorneys fees and seeking to recover benefits under the described Policies. As a further result of Nationwide's outrageous and willful conduct and bad faith, Cheryl have suffered embarrassment and humiliation and mental and emotional distress and discomfort all to damages in an amount in excess of $250,000.00.

## COUNT III - NEGLIGENCE AND GROSS NEGLIGENCE

27.     Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

28.     The actions and inactions of the Nationwide, as described above, constitute negligence, entitling Cheryl to all consequential and special damages allowable under law, and further constitute such gross and reckless negligence so as to constitute malice or reckless disregard for Cheryl's rights, thereby entitling Cheryl to heightened damages, including attorneys fees, interest and punitive damages.

29.     Specifically, Nationwide was grossly negligent in the assessment of tornado damage and the subsequent payment of insurance proceeds they knew were less than the actual damages and less than the coverage paid for by Cheryl pursuant to her contract of insurance with Nationwide.

30.     Nationwide has special expertise in damage assessment and the appraisal of damage claims. Despite that knowledge that the structure could not be repaired for the amount tendered, Nationwide intentionally, or with wanton disregard for Cheryl, did not pay for the damage they knew Cheryl had incurred, even though said payments were clearly defined under the contract of insurance between Cheryl and Nationwide.

## COUNT IV - BREACH OF CONTRACT

31.     Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

32.     The actions and inactions of Nationwide, as described above, constitute a breach of contract.

33.     Cheryl is entitled to all damages allowable for breach of contract, including, but not limited to, nominal damages, incidental damages, consequential damages, special damages, attorneys fees, interest and punitive damages.

## COUNT V - TORTIOUS BREACH OF CONTRACT

34.     Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

35.     The course of conduct of Nationwide, and the actions and inactions of Nationwide, constitute breaches of contract to such an extent as to rise to the level of an independent tort constituting tortious breach of contract, entitling Cheryl to consequential damages, special damages, attorneys fees, interest and punitive damages, and all other damages allowable by law.

## COUNT VI - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

36.     Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

37.     The actions and inactions of Nationwide, as described above, constitute a breach of the covenant of good faith and fair dealing implied in all contractual arrangements between contracting parties in the State of Mississippi, entitling Cheryl to all damages allowable pursuant to law, including consequential damages, special damages, attorneys fees, interest and punitive damages.

38.     Specifically, Nationwide owed Cheryl the duty to act in good faith and to deal fairly with her. Included within that duty was a duty to promptly and fairly investigate all relevant information and make a realistic evaluation of the claim, yet the agents and employees assigned

to adjust and evaluate the loss were not familiar with or were intentionally disregarding the clear evidence supporting the amounts owed to Cheryl. As a result, Nationwide breached the covenant of good faith and fair dealing.

### COUNT VII - NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39. Cheryl incorporates by reference herein the allegations set forth in paragraphs above.

40. The actions and inactions of Nationwide, as described above, constitute negligent and intentional infliction of emotional distress, entitling the Cheryl to all damages allowable pursuant to law.

WHEREFORE, PREMISES CONSIDERED, Cheryl demands judgment of, from, and against Defendant for compensatory damages, special damages, emotional distress damages, incidental and consequential damages, plus attorneys fees and costs, *Veasley* damages, punitive damages, and pre-judgment and post-judgment interest as determined by a jury of Cheryl's peers in the Southern District of Mississippi.

Respectfully submitted this 15th day of November, 2017.

**CHERYL WEBB, Plaintiff**

___/s/ P. Manion Anderson_____
P. MANION ANDERSON, MSB # 104250

P. MANION ANDERSON, MSB # 104250
H. VIRGINIA KRAMER, MSB # 105477
McHARD, McHARD, ANDERSON & ASSOCIATES, PLLC
ATTORNEYS AT LAW
140 MAYFAIR ROAD, SUITE 1500
HATTIESBURG, MS 39402
T: 601-450-1715
F:  601-450-1719
manderson@mchardlaw.com
vkramer@mchardlaw.com